## BARROW *v.* HUNTON.

1. A. having recovered a judgment against B. and C. in the District Court for the parish of New Orleans, B., on the ground among others that the judgment, having been obtained by default and without lawful service upon him, was void, filed a petition in that court praying for a decree of nullity and for an injunction. An injunction and citation were issued and served upon A., who thereupon, alleging that he was a citizen of Missouri and B. a citizen of Louisiana, prayed that the action of nullity be removed to the Circuit Court of the United States. It having been so removed, and B.'s petition amended by converting it into a bill so as to conform to the practice in equity, that court, on a final hearing upon the pleadings and proofs, the latter including an exemplification of the record and proceedings in the original suit, dissolved the injunction and dismissed the bill. *Held*, that the causes relied on for the nullity of the judgment being, under the Code of Louisiana, vices of form, the proceeding by petition was substantially a continuation of the original suit; and that the Circuit Court could not take cognizance thereof.

2. The character of cases sought to be removed to the courts of the United States is always open to examination, to determine whether, *ratione materiæ*, they are competent to take jurisdiction thereof. State rules on the subject cannot deprive them of it.

APPEAL from the Circuit Court of the United States for the District of Louisiana.

On the 19th of January, 1874, Logan Hunton recovered in the Fourth District Court for the parish of Orleans, Louisiana, against F. M. Goodrich and one Pilcher, a judgment for $2,500, and interest at eight per cent per annum from May 1, 1861. On the 28th of that month, Goodrich filed a petition in said court, praying for a decree of nullity of the said judgment, and for an injunction in the mean time, setting forth as grounds for such relief that the judgment complained of was void, because it was founded on a default taken, and no lawful service of the petition and citation in the suit had ever been made on him, Goodrich; and because the partnership of Pilcher & Goodrich had been dissolved before 1866; and because he, Goodrich, had been discharged as a bankrupt in 1868. An injunction and citation were thereupon issued and served.

On Feb. 3, 1874, Hunton, the defendant in this proceeding, filed a petition for the removal of the action of nullity to the Circuit Court of the United States, alleging that he was a citizen of Missouri, and that Goodrich, the plaintiff, was a citizen

of Louisiana; and after a hearing on the subject, an order of removal was made by the District Court.   The plaintiff moved the Circuit Court of the United States to remand the cause; but this motion was denied, and the suit proceeded in the latter court.   After various proceedings had, the plaintiff, by leave of the court, amended his petition to conform to the equity practice of the United States court, converting it into a bill in equity containing substantially the same averments, and praying the same relief as before.   The defendant answered, and the parties went to proofs.   Amongst the proofs adduced was an exemplification of the record and proceedings in the original suit in which the judgment was rendered, which the plaintiff in this suit sought to have declared null and void.   On the 14th of February, 1876, the Circuit Court made a final decree, as follows: "This cause came on to be heard upon the bill, answer, replication, and proofs, and was argued by counsel. On consideration whereof, it is ordered, adjudged, and decreed that the injunction herein issued by the State court was wrongfully obtained, and is therefore dissolved.   And it is further ordered and decreed that the plaintiff's bill be dismissed at his costs."

A rehearing having been refused, the decree was confirmed on the 28th of February, 1876.

From this decree the present appeal was taken; and it is sought to be reversed on two grounds, upon which errors are assigned, namely: —

1st, That the transfer was illegally made, and the Circuit Court was without jurisdiction.

2d, That it appears that the Fourth District Court, which rendered the judgment against F. M. Goodrich, was without jurisdiction, and therefore the judgment is null and void.

Goodrich having died *pendente lite,* Barrow, his administrator, was substituted in his stead.

*Mr. George L. Bright* for the appellant.

The Circuit Court had no jurisdiction of a suit seeking to annul the judgment of the State court, or to enjoin the execution thereof, and the transfer of the suit was made without authority of law.   *Bank* v. *Turnbull & Co.,* 16 Wall. 190; *Gwin* v. *Breedlove,* 2 How. 29; *Freeman* v. *Howe,* 24 id. 460; *Dunn*

v. *Clarke,* 8 Pet. 1; *Williams* v. *Bryne,* Hempst. 472; *Brooks* v. *Montgomery,* 23 La. Ann. 450; *Diggs* v. *Walcott,* 4 Cranch, 179; *Peck* v. *Jermes,* 7 How. 623; *Watson* v. *Jones,* 13 Wall. 719; *Dial et al.* v. *Reynolds et al.,* 96 U. S. 340; *Ranlett* v. *The Collier White Lead Co.,* 30 La. Ann. 56; *Goodrich* v. *Hunton,* 29 id. 372; 2 Story, Const., sects. 1757, 1759; 1 Kent, Com., sect. 19, p. 451; Act 1793, 1 Stat. 334; Rev. Stat., sect. 720.

*Mr. Thomas J. Durant, contra.*

The question of the legality of the removal of the case to the Circuit Court cannot be first raised here. The appellant did not object to the jurisdiction of that court, but filed his bill, which was ultimately dismissed upon the merits. He ought not to be allowed to take his chances there, and, on an adverse decision, assign for error that the removal was unauthorized.

He now seems to consider that the Circuit Court was without jurisdiction of the cause, although it appears by the record that the complainant was a citizen of Louisiana, and the defendant, of Missouri. There was, therefore, no want of jurisdiction, *ratione personarum.*

But it is urged that the Circuit Court could not annul the judgment of the State court, and enjoin its execution.

It is perhaps a sufficient answer to this proposition to say, that the Circuit Court neither annulled nor enjoined that judgment. It is true that the appellant insisted before the lower court that it ought to do so; but the court refused so to grant the relief prayed for in his bill.

All the authorities, therefore, which have been cited in support of the first assignment of error, if they have any application, must sustain the action below.

MR. JUSTICE BRADLEY, after stating the facts, delivered the opinion of the court.

The question presented with regard to the jurisdiction of the Circuit Court is, whether the proceeding to procure nullity of the former judgment in such a case as the present is or is not in its nature a separate suit, or whether it is a supplementary proceeding so connected with the original suit as to form an incident to it, and substantially a continuation of it. If the

proceeding is merely tantamount to the common-law practice of moving to set aside a judgment for irregularity, or to a writ of error, or to a bill of review or an appeal, it would belong to the latter category, and the United States court could not properly entertain jurisdiction of the case. Otherwise, the Circuit Courts of the United States would become invested with power to control the proceedings in the State courts, or would have appellate jurisdiction over them in all cases where the parties are citizens of different States. Such a result would be totally inadmissible.

On the other hand, if the proceedings are tantamount to a bill in equity to set aside a decree for fraud in the obtaining thereof, then they constitute an original and independent proceeding, and according to the doctrine laid down in *Gaines* v. *Fuentes* (92 U. S. 10), the case might be within the cognizance of the Federal courts. The distinction between the two classes of cases may be somewhat nice, but it may be affirmed to exist. In the one class there would be a mere revision of errors and irregularities, or of the legality and correctness of the judgments and decrees of the State courts; and in the other class, the investigation of a new case arising upon new facts, although having relation to the validity of an actual judgment or decree, or of the party's right to claim any benefit by reason thereof.

It would seem apparent that the proceeding in the present case was one that affected the mere regularity of the original judgment. In the common-law practice, it would have been a motion to set aside the judgment for irregularity, or a writ of error *coram vobis.*

It will be more satisfactory, however, to take a brief view of the practice of Louisiana on this subject.

The process for procuring nullity of a judgment in that State is prescribed by the Code of Practice, in which we find the following provisions : —

"ART. 556. Definitive judgments may be revised, set aside, or reversed: 1, by a new trial; 2, by appeal; 3, by action of nullity; 4, by rescission. The last mode can only be exercised by minors, or persons who were absent when judgment was rendered against them."

" ART. 605. The causes for which the nullity of a definitive judgment may be demanded are twofold : those that are relative to the form of proceeding, and those that appertain to the merits of the question to be tried."

Art. 606 specifies the vices of form for which a judgment can be annulled ; as, when against a minor appearing without a curator, or against a. married woman appearing without the authority of her husband ; where the defendant is condemned by default without being cited ; where the judge was incompetent to try the suit ; and where defendant has not been legally cited, and has not entered appearance, and judgment is by default.

Art. 607 specifies the grounds of nullity relating to the merits ; namely, where the judgment has been obtained through fraud, bribery, forgery of documents, &c.

" ART. 608. The nullity of judgment may be demanded from the same court which has rendered the same, or from the court of appeal before which the appeal from such judgment was taken, pursuant to the provisions hereafter expressed.

" ART. 609. The nullity can be demanded on the appeal, only while the appeal is still pending, and when the nullity is apparent on the face of the records.

" ART. 610. The party praying for the nullity of a judgment before the court which has rendered the same must bring his action by means of a petition ; and the adverse party must be cited to appear, as in ordinary suits."

From these extracts it is to be inferred that the action of nullity must be brought in the same court which rendered the judgment, or in the court of appeal when an appeal is pending. And so the Supreme Court of Louisiana has decided.   Hennen's Digest, art. Judgment, XI. (c), and cases there cited.   In *David, Adm'r,* v. *Calouret* (1 La. Ann. 171) the court says : " The settlement made before the notary, under the order of the judge, . . . sought to be annulled in this suit, was made the judgment of the court by a decree, . . . and before that court alone ought the action to annul the act to have been brought."   The action of rescission, which is nearly identical with that of nullity, is expressly required by art. 616 of the

Code of Practice to be brought in the court that rendered the judgment.

The fact that an action of nullity can only be brought in the court which rendered the judgment, or in the court to which such judgment is appealed, is entitled to some weight in determining the question now under consideration. It shows that in the estimation of the legislature of Louisiana there is a manifest propriety in submitting the question of the validity of a judgment to the court which rendered it, or to the court which has the right to revise the judgment by way of appeal. We are not disposed, however, to allow this consideration to operate so far as to make it an invariable criterion of the want of jurisdiction in the courts of the United States. If the State legislatures could, by investing certain courts with exclusive jurisdiction over certain subjects, deprive the Federal courts of all jurisdiction, they might seriously interfere with the right of the citizen to resort to those courts. The character of the cases themselves is always open to examination for the purpose of determining whether, *ratione materiæ*, the courts of the United States are incompetent to take jurisdiction thereof. State rules on the subject cannot deprive them of it.

The classification of the causes of nullity in the Louisiana Code into causes relative to form and those relative to the merits is nearly coincident with the classification above suggested, of cases which are, and cases which are not, cognizable in the courts of the United States. Causes of nullity relating to form would fall in that class of cases which could not be brought in these courts, or be removed thereto. The present case is one of that character. It is precisely described in the fourth division of art. 606 of the Code.

In our judgment, therefore, the case was one of which the Circuit Court could not take cognizance; and therefore the judgment must be reversed, and the record remitted with directions to remand the cause to the State court from which it was removed.

*So ordered.*