UNION PAC. R. CO. v. FLYNN, City Clerk, et al.

(Circuit Court, W. D. Missouri, W. D.   July 16, 1910.)

1. COURTS (§ 508*)—STATE AND FEDERAL.

Kansas City Charter, art. 10, § 4, confers on the municipal court of such city concurrent jurisdiction with the circuit court of the state of proceedings for the enforcement of special tax bills for taking and damaging private property, and article 6, § 1, provides that such proceedings shall be taken in the municipal court. Section 4 declares that a special tax bill may be issued by the municipal court clerk, attested by the city clerk, and then filed in the office of the clerk of the circuit court and indexed as a judgment in favor of the city against the property described in the bill, on which a special execution may be issued; and also declares that tax bills so filed and recorded shall be subject to the order of the court and may be set aside, or the amount of the assessment reduced on motion of any party interested in the property assessed on reasonable notice to

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the city. *Held*, that where a property owner, against which a special tax bill had been ordered, claimed that the proceedings were void for lack of proper notice, it had an adequate remedy at law in the state court either by a proceeding under section 4, or by certiorari, and hence could not maintain a bill in the federal Circuit Court to restrain the city clerk from attesting and the circuit clerk from filing the tax bills against its property on the theory that to do so would constitute a taking of property without due process of law.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1418–1430; Dec. Dig. § 508.*]

2. MUNICIPAL CORPORATIONS (§ 538*)—BILL—LACHES.

Where complainant had no knowledge of certain proceedings by a city to condemn property for public uses and to assess the cost thereof on an adjoining district, until after the time to appeal from the assessment had expired, he was not guilty of laches.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 538.*]

3. COURTS (§§ 259, 262*)—FEDERAL COURTS—EQUITY JURISDICTION.

The equity jurisdiction of the federal courts is the same as that possessed by the High Court of Chancery in England, and is uniform throughout the states and not subject to limitation nor restraint by state legislation.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 795, 797, 798; Dec. Dig. §§ 259, 262.*]

In Equity. Bill by the Union Pacific Railroad Company against M. A. Flynn, City Clerk, and Oscar Hochland, Clerk of the Circuit Court of Jackson County, Mo. Bill dismissed.

Isaac N. Watson, for complainant.

John G. Park, City Counselor, Francis M. Hayward, and John G. Schaich, for defendants.

VAN VALKENBURGH, District Judge: This cause comes on for hearing upon the amended bill of complaint in which an injunction is prayed restraining the defendant M. A. Flynn, city clerk, from attesting, and the defendant Oscar Hochland, circuit clerk, from filing in the office of the circuit court of Jackson county, Mo., certain tax bills against the property of complainant growing out of proceedings in the municipal court of Kansas City, Mo., for the condemnation of certain lands in Kansas City for the opening and widening of Sixth street in said city, and the assessment of benefits against other property, including the property of complainant, to pay therefor. The facts, as alleged in the bill, and as conceded at the hearing, are as follows:

October 18, 1909, the common council of Kansas City passed an ordinance, which was approved by the mayor of said city on the 19th day of October, 1909, providing for the opening and widening of Sixth street within boundaries therein described, condemning all private property within said limits for public use as a part of Sixth street, and designating and prescribing the limits within which private property should be deemed benefited, and be assessed and charged to pay compensation for such taking. Within these limits lies the property of complainant described in the amended bill. Thereafter, on

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the 1st day of November, 1909, the municipal court of Kansas City, which by charter is given jurisdiction of such matters, made an order notifying all persons who might be concerned in such proceeding that on the 6th day of December, 1909, at 2 o'clock p. m., in the lower house council chamber, on the fourth floor of the city hall building in Kansas City, Jackson county, Mo., a jury would be impaneled to ascertain the compensation for the property to be taken or damaged, and to make assessments to pay for the same, and further directed that a copy of this order should be published in the Daily Record, a newspaper at that time doing the printing for the city, for four consecutive weeks, the last insertion to be made not more than one week prior to the day set for said hearing, and that a copy of the order be served, as by the charter of Kansas City provided, upon each and every resident of Kansas City owning or having an interest in the real estate proposed to be taken or damaged. This order was published in the paper designated, beginning on the 1st of November, 1909, and daily thereafter, exclusive of Sundays, up to and including the 27th day of November, 1909, as shown by affidavit of publication duly set out in the bill. It conclusively appeared that the notice was published once in each week for four consecutive weeks, but that the last publication was but 26 days after the first date of publication, and 9 days instead of one week before the date set for the hearing. The complainant, being a citizen of the state of Utah, was served by no other process than by the publication aforesaid. This it claims to be insufficient and void; that the court thereby acquired no jurisdiction over it; and that, if proper relief be not granted, its property will be taken without due process of law.

On the 6th day of December, 1909, the cause coming on to be heard, the city, by its attorney, submitted to the court the proofs of publication and personal service. Thereupon that court decided that the service was sufficient, and the proceedings were continued until the 13th day of December, 1909, for the purpose of impaneling a jury. On the latter date a jury was impaneled and evidence heard, and as a result the jury returned into court a verdict by which there was assessed against the property of complainant the sum of $2,478.28, which verdict was within 60 days thereafter duly confirmed by the common council. It is then charged in the bill, and substantially admitted, that the clerk of the municipal court of Kansas City is about to issue special tax bills in said amount under and by virtue of said proceedings in the municipal court of said city against the property of the complainant; that the defendant Flynn, city clerk of Kansas City, Mo., is about to attest the signature of said clerk of the municipal court to said tax bills; and that the defendant Oscar Hochland is about to file and record said tax bills in the office of the circuit clerk of Jackson county, Mo., and index the same as a judgment of Kansas City against the property of complainant. It is further charged that said tax bills when so attested and filed will become and be a cloud upon the complainant's title to the premises. By reason of the diversity of citizenship alleged and shown to exist, this court is asked to restrain defendants from thus placing a cloud upon complainant's title, for the rea-

son that said proceedings are void for want of jurisdiction. Other irregularities are set up in the bill, but no showing was made in support thereof; they were practically abandoned at the hearing, and counsel for complainant frankly stated that complainant's contention rested upon the defect in the publication of notice above referred to.

Assuming, for the purposes of this discussion, that the publication notice complained of was insufficient to confer jurisdiction upon the municipal court, and that no charge upon the property of complainant can or should be enforced by virtue of the proceedings in that court, the question for consideration is: Has this court jurisdiction to afford the relief for which complainant prays?

Counsel for defendants invoke section 720 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 581), which is as follows:

"The right of injunction shall not be granted by any court of the United States to stay any proceeding in any court of a state except in those cases where such injunction may be authorized by any law relating to proceedings in bankruptcy"

—and contend that this proceeding comes within the prohibition of that section. They also insist that, if complainant's · contention be true, the tax bills would be void on the face of the record and would create no cloud upon complainant's title, and that by virtue of the charter provisions, and other well-known forms of procedure, complainant has a plain and adequate remedy at law. On the other hand, counsel for complainant contends that this suit does not seek to enjoin any proceeding in the municipal court of Kansas City, and does not interfere with any process issued out of that court, neither does it enjoin any officer of that court from executing any process issued by it, that this action is against parties other than those to the original suit, and, for all these reasons, does not fall within the prohibition of section 720. It is also alleged in the bill that the time for appeal, provided by charter, expired before actual knowledge of the condemnation proceeding was acquired by the complainant; that, if any remedy exists, that remedy lies in a court other than that which rendered the erroneous judgment; and that any subsequent suit to remove cloud would be equitable in its nature, and this court now should prevent an act which some other court of equity, state or federal, must hereafter be called upon to set aside.

A pertinent question for early consideration with regard to the jurisdiction of this court is whether this proceeding is in its nature a separate suit, or whether it is a supplementary proceeding so connected with the original suit as to form an incident of it and substantially a continuation of it. Concerning this distinction the Supreme Court of the United States, in the leading case of Barrow v. Hunton, 99 U. S. 80, 25 L. Ed. 407, says:

"If the proceeding is merely tantamount to the common-law practice of moving to set aside a judgment for irregularity, or to a writ of error, or to a bill of review or an appeal, it would belong to the latter category, and the United States court could not properly entertain jurisdiction of the case. Otherwise, the Circuit Courts of the United States would become invested with power to control the proceedings in the state courts, or would have appellate jurisdic-

tion over them in all cases where the parties are citizens of different states. Such a result would be totally inadmissible."

It is further pointed out that such would be a mere revision of errors and irregularities, or of the legality and correctness of the judgments and decrees of the state courts.

In Leathe v. Thomas, 97 Fed. 138, 38 C. C. A. 75, it was said:

"The prohibition of the statute does not extend to proceedings in a court of the state up to and including final judgment only, but to the entire proceedings from the commencement of the suit until the execution issued on the judgment or decree is satisfied." Wayman v. Southard, 10 Wheat. 1, 6 L. Ed. 253.

The same doctrine is further announced in Marshall v. Holmes, 141 U. S. 589, loc. cit. 597, 12 Sup. Ct. 62, 35 L. Ed. 870, cited by complainant.

In Leathe v. Thomas, supra, in denying jurisdiction under such circumstances, the Circuit Court of Appeals for the Seventh Circuit said:

"The section above cited (section 720, Rev. St. U. S.) is not the only obstacle which prevents the sustaining of the order of injunction. The principle of comity which obtains between courts of concurrent jurisdiction forms a recognized part of their duty. It requires that a subject-matter drawn and remaining within the cognizance of a court of general jurisdiction shall not be drawn into this controversy or litigated in another court of concurrent jurisdiction. This principle prevails in all courts of concurrent jurisdiction deriving their powers from a common source. 'A departure from this rule would lead to the utmost confusion and to endless strife between courts deriving their powers from the same source; but how much more disastrous would be the consequence of such a course in the conflict of jurisdiction between courts whose powers are derived from entirely different sources?' Buck v. Colbath, 3 Wall. 334, 341 [18 L. Ed. 257]."

In this circuit this subject has been thoroughly discussed by the Court of Appeals in the case of Little Rock Junction Ry. v. Burke, 66 Fed. 83, 13 C. C. A. 341. That was a case in which the Circuit Court of the United States was asked to set aside a decree of a state court on the ground that such decree was utterly void for want of jurisdiction because of irregularities in the proof of publication of a jurisdictional order. As in the case at bar, the irregularity, if it was one, appeared upon the face of the record. Judge Thayer in his opinion said:

"It may be admitted that the federal Circuit Courts have power to entertain suits to enjoin persons from asserting any right or title under a judgment or decree of a state court of co-ordinate jurisdiction 'that is alleged to have been obtained by fraud or collusion. (Citing authorities.) Possibly, a bill in equity to obtain the same relief may'be entertained in any case where it is shown by proper averments that the judgment of a state court which is apparently regular and valid, and for that reason is not subject to collateral attack, for some reason not disclosed by the record is in fact invalid and of no effect. A complaint alleging such facts would furnish a proper foundation for an original suit in equity because additional issues would be raised and new facts would be brought upon the record as the basis for independent judicial action. But a complaint or a petition which seeks to impeach a decree, without the aid of extrinsic evidence, for want of jurisdiction apparent upon the face of the record, simply imposes upon the court to which it is addressed the duty of re-examining questions that have once'been tried and decided, and for that reason a proceeding of that nature cannot be regarded as a new action, but is rather a'continuation of the original suit."

After reviewing Barrow v. Hunton, supra, the court further says:

"We think, therefore, that it may be accepted as a general rule, in the absence of any statutory provisions on the subject, that the proper forum in which to seek relief, otherwise than by an appeal or writ of error, against a judgment or decree which is alleged to be void on the face of the record, is in the court by which such judgment or decree was rendered, and that other courts of co-ordinate jurisdiction have no authority to grant relief in such cases. But, whatever may be the correct rule in this respect as between state courts of equal authority, it is manifestly true, we think, that, owing to the peculiar relations which exist between state and federal courts of co-ordinate jurisdiction, the federal Circuit Court ought not to review, modify, or annul a judgment or decree of a state court, unless such review is sought on a state of facts not disclosed by the record of the state court, which, for that reason, has not undergone judicial examination. * * * The federal court should remit proceedings such as these to the judicial tribunal of the state which made the record that is to be reviewed or impeached."

It seems clear then that if this proceeding seeks, in effect, to stay any proceedings in any court of a state, up to and including final judgment, or flowing necessarily therefrom as necessary to the beneficial exercise of jurisdiction with the result that it is merely tantamount to moving to set aside a judgment for irregularity, or to a writ of error, or to a bill of review or an appeal, then jurisdiction is wanting in the Circuit Court of the United States, not only by reason of the prohibition of section 720 of the Revised Statutes aforesaid, but under the principle of comity which obtains between courts of concurrent jurisdiction and which makes such a review improper.

What is the situation in this respect in the case at bar? The answer to this question requires a brief examination into the organization of the municipal court of Kansas City, and the proceedings established by the charter of that city for the condemnation of lands and the issuance of tax bills against which this action is leveled.

Section 10 of article 4 of the present charter of Kansas City, among other things, provides:

"In suits for the collection of taxes, or for the enforcement of special tax bills, and in proceedings for taking and damaging private property, for the establishment of bill board restrictions and other easements, and for ascertaining damages caused by change of grade, or other exercise of the power of eminent domain, the jurisdiction of the municipal court shall be concurrent with the circuit court of Jackson county, Missouri."

The second paragraph of section 1, art. 6, is as follows:

"Unless otherwise specified by ordinance, and except as elsewhere in this charter prescribed, such proceedings shall be conducted in the municipal court of the city which shall, while in the discharge of such duty, have and exercise the powers of the circuit court for the preservation of order and enforcing process issued in the course of the proceedings, and may summon and compel by attachment, or otherwise, the attendance of witnesses and jurors, and fine and commit any person guilty of misdemeanor or contempt and the judge of said court shall pass on the competency of evidence, and instruct the jury on questions of law arising. The clerk of such court shall issue process and record orders made by said court."

Provisions follow for the condemnation of property in the manner here followed, or attempted to be followed, resulting in the verdict of a jury as to the amounts of damages and benefits.

Section 4 of article 6 provides that the verdict when reported shall be confirmed by the common council within 60 days from the making of the report. This was done in the present case. The amounts assessed by the verdict shall be collected by the city, as by ordinance provided, by suit or otherwise, as any other special taxes, or by special execution, as follows, namely:

"A special tax bill against any lot or parcel of property assessed may be issued by the clerk of the municipal court, under his hand, and his signature thereto shall be attested by the city clerk under the seal of the city, which tax bill shall contain a description of such lot or parcel of property, and the amount assessed against the same as fixed by the verdict. * * * Each tax bill, so issued, shall be filed in the office of the clerk of the circuit court of Jackson county, at Kansas City, and by such clerk recorded and indexed as a judgment in favor of the city, against the property described in the tax bill. At any time after the filing and recording of any such tax bill, as aforesaid, a special execution may be issued thereon out of the said circuit court in vacation or term time, as on a judgment of the court in favor of the city."

It will be observed that these are the acts of the city clerk and the circuit clerk which are here sought to be enjoined, and such is the nature of the tax bill which it is charged will constitute a cloud on the complainant's title. It will further be observed that this proceeding, which is initiated in the municipal court, does not ripen into a judgment until the filing of the tax bill in the office of the clerk of the circuit court, where it is defined as a judgment, upon which a special execution may be issued as on a judgment of the court (the circuit court) in favor of the city. It must follow, I think, either that the judgment secured is jointly created by proceedings in both the municipal and circuit courts, or that the acts of the city clerk and the circuit clerk are essential steps and proceedings in the consummation of the judgment of the municipal court—for these cases a court of concurrent and competent jurisdiction. The acts of the various clerks in rendering effectual and beneficial the proceedings in the municipal court and the verdict of the jury are not merely ministerial acts of parties foreign to the record, but they constitute an integral part of the court machinery designated by the charter for the rendition of judgments in condemnation cases and for the ultimate collection of these judgments. These steps must be regarded as proceedings in the courts of the state, and it would also seem that the judgment, once it becomes such in fact, is, in effect, a judgment of the circuit court of the state—a court of co-ordinate jurisdiction.

This view receives confirmation from an inspection of a succeeding paragraph of the said section 4 of article 6 of the charter, which is as follows:

"Tax bills filed and recorded as aforesaid shall be subject to the order of the court, and may be set aside or the amount of assessment reduced on motion of any party interested in the property assessed, the city having reasonable notice of the filing of such motion and the object thereof."

This unconditional privilege vouchsafed to the tax bill debtor guarantees complete opportunity for the review and correction of irregularities of this nature in the same court to which the laws of the state and city have confided the final establishment of and control over the tax bill judgment.

· If, however, it is insisted that this is the judgment exclusively of the municipal court, that that court is in general of such inferior and narrow jurisdiction that it can afford no relief, and that to remit these proceedings to that tribunal would afford no remedy to complainant, much force must be given to the suggestion of counsel for defendants that a writ of certiorari will lie to correct the proceedings of the inferior court which are apparent upon the face of the record. Section 23 of article 6 of the Constitution of Missouri (Ann. St. 1906, p. 235) provides that:

"The circuit court shall exercise a superintending control over criminal courts, probate courts, county courts, municipal corporation courts, justice of the peace courts, and all inferior tribunals in each county of their respective circuits."

The complainant asserts that it was not properly served with process, was not before the municipal court, and acquired no knowledge of these proceedings until after the time for appeal had expired. No laches, therefore, can be imputed to it. The Supreme Court of the United States, in Ewing v. City of St. Louis, 5 Wall. 413, 18 L. Ed. 657, under analogous conditions, prescribed this writ for the review and correction of like irregularities. Mr. Justice Field, delivering the opinion of the court, said:

"With the proceedings and determinations of inferior boards or tribunals of special jurisdiction, courts of equity will not interfere, unless it should become necessary to prevent a multiplicity of suits or irreparable injury, or unless the proceeding sought to be annulled or corrected is valid upon its face, and the alleged invalidity consists in matters to be established by extrinsic evidence. In other cases the review and correction of the proceedings must be obtained by the writ of certiorari. * * * The complainant can ask no greater relief in the courts of the United States than he could obtain were he to resort to the state courts. If in the latter courts equity would afford no relief, neither will it in the former."

The right of the city within proper bounds to direct and control proceedings connected with public improvements within its own limits will be conceded. That the equity jurisdiction conferred on the federal courts is the same as that the High Court of Chancery in England possesses; that it is subject to neither limitation nor restraint by state legislation and is uniform throughout the different states of the union, —cannot be denied. That such jurisdiction should be exerted unhesitatingly when properly invoked is one of the most valuable guaranties of the federal Constitution; but so important to the citizen is this constitutional safeguard that it should never be impaired nor discredited by doubtful or injudicious uses.

It appearing then that it is sought by this action, in effect, to review proceedings in a state court of competent jurisdiction for the revision of alleged errors and irregularities therein, apparent upon the face of the record, and that complainant is not without an adequate remedy in the jurisdiction in which such irregularities arose, and are properly reviewable, it follows that this court cannot take jurisdiction of the matter; that the injunction prayed must be denied, and the bill dismissed, without prejudice to another suit at law or in equity in the proper jurisdiction.

It is so ordered.